# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
*Southern Division*

|  |  |
|---|---|
| VALENCIA HARDISON, | * |
| Plaintiff, | * |
| v. | *    Case No.: PWG-15-3287 |
| HEALTHCARE TRAINING SOLUTIONS, LLC, *et al.*, | * |
| Defendants. | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION AND ORDER

Plaintiff Valencia Hardison worked for Defendants Healthcare Training Solutions, LLC ("HTS") and its chief executive officer and owner, Carlecia McBryde, as "a part-time 'as needed' instructor at HTS," where she "taught students to become certified nursing assistants," which was the service Defendants' business provided. Jt. Stmt. of Facts ¶¶ 1–3.[1] Believing that she had not been paid her full wages, Hardison complained, and McBryde told her Defendants were "done with [her]," which Hardison perceived as a termination of her employment. Am. Compl. ¶¶ 4, 44, 50, ECF No. 13-1; Hardison Dep. 15:24–16-1, Jt. Rec. 70, ECF No. 42. Hardison filed a five-count complaint in federal court, alleging failure to pay wages, in violation of Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Lab. & Empl. §§ 3-502 and 3-505; retaliatory termination, in violation of the Fair Labor Standards Act

---

[1] Because the parties filed cross-motions for summary judgment, "'each motion [is] considered individually, and the facts relevant to each [are] viewed in the light most favorable to the non-movant.'" *Lynn v. Monarch Recovery Mgmt., Inc.*, No. WDQ-11-2824, 2013 WL 1247815, at *1 n.5 (D. Md. Mar. 25, 2013) (quoting *Mellen v. Bunting*, 327 F.3d 355, 363 (4th Cir. 2003)).

("FLSA"), 29 U.S.C. §§ 201–219; and wrongful discharge, in violation of Maryland public policy. Compl. ¶¶ 51–78, ECF No. 1; *see* Am. Compl. ¶¶ 58–87 (same counts). Now pending are the parties' cross-motions for summary judgment. ECF Nos. 35, 39.[2] Because Hardison must establish that she was an employee of Defendants to prevail on any of her claims, yet the undisputed facts demonstrate that she was an independent contractor, I will grant Defendants' motion and deny Plaintiff's motion.[3]

## Standard of Review

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013). If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 & n.10 (1986). The existence of only a "scintilla of evidence" is not enough to defeat a motion for

---

[2] The parties fully briefed the motions. ECF Nos. 35-1, 39-1, 40, 41. They also provided a Joint Statement of Undisputed Facts, ECF No. 35-2, and a Joint Record, ECF Nos. 41, 42. A hearing is not necessary. *See* Loc. R. 105.6.

[3] Hardison argued in her opening brief that she was an employee, not an independent contractor. *See* Pl.'s Mem. 7–9. When Defendants failed to address the issue in their opening brief, Hardison urged the Court to treat the matter as conceded. Pl.'s Reply 1 n.1. Certainly, that would be appropriate where a party waives its one opportunity to respond to the other side's argument. *See, e.g.*, *Stenlund v. Marriott Int'l*, 172 F. Supp. 3d 874, 887 (D. Md. 2016). But here, where the parties filed cross-motions, Defendants had and took the opportunity to respond in their reply. Given that Hardison also had the opportunity to present her side, I will consider the issue.

summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment. *Id.*

## Discussion

To prevail on a claim under the FLSA, the MWPCL, or Maryland common law, Hardison first must show that she was an "employee" of Defendants. *See* 29 U.S.C. § 215(a)(3) (providing that it is "unlawful for any person . . . to discharge . . . any *employee* because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [the FLSA]" (emphasis added)); *Hall v. DIRECTV, LLC*, 846 F.3d 757, 764 (4th Cir. 2017) ("[I]ndependent contractors [are] outside of the FLSA's scope."); *Butler v. PP & G, Inc.*, No. WMN-13-430, 2013 WL 5964476, at *2 (D. Md. Nov. 7, 2013) (discussing FLSA and MWPCL); *Cogan v. Harford Mem. Hosp.*, 843 F. Supp. 1013, 1022 (D. Md. 1994) (noting that, while employee could sue for wrongful discharge under Maryland public policy, Maryland courts had not extended right to bring public policy claim of wrongful discharge under Maryland law to independent contractor); *Talbot v. Baltimore City Bd. of Sch. Comm'rs*, No. 0308 Sept. Term 2014, 2016 WL 1749697, at *8 (Md. Ct. Spec. App. May 3, 2016) (relying on *Cogan* and concluding that "Mr. Talbot's claim for wrongful termination fails because he was not an employee"). The FLSA defines an employee as "any individual employed by an employer" and it defines "employ" as "to suffer or permit to work." 29 U.S.C. §§ 203(e)(1), (g). Though these definitions deliberately are broad, the FLSA recognizes a difference between employees, which it covers, and independent contractors, which it does not. *See Schultz v. Capital Int'l Sec., Inc.*, 466 F.3d 298, 304 (4th Cir. 2006). And, "putting on an 'independent contractor' label does not

3

take the worker from the protection of the [FLSA]" when "the work done, in its essence, follows the usual path of an employee." *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 729 (1947).

"Whether a worker is an employee or an independent contractor under the FLSA is ultimately a legal question . . . ." *McFeeley v. Jackson St. Entm't, LLC*, 825 F.3d 235, 240 (4th Cir. 2016) (citing *Schultz*, 466 F.3d at 304). To answer this question, "courts look to the 'economic realities of the relationship between the worker and the putative employer'" and consider six factors:

> (1) the degree of control that the putative employer has over the manner in which the work is performed; (2) the worker's opportunities for profit or loss dependent on his managerial skill; (3) the worker's investment in equipment or material, or his employment of other workers; (4) the degree of skill required for the work; (5) the permanence of the working relationship; and (6) the degree to which the services rendered are an integral part of the putative employer's business.

*McFeeley*, 825 F.3d at 241 (quoting *Schultz*, 466 F.3d at 304–05); *see also Salinas v. Commercial Interiors, Inc.*, 848 F.3d 125, 139, 150 (4th Cir. 2017) (noting that these "*Silk* factors," now applied as the "economic reality" test, first were discussed in *United States v. Silk*, 331 U.S. 704, 715 (1947)). None of these factors is dispositive on its own, *id.*, and "courts look at the totality of the circumstances" instead of "applying these factors 'mechanically,'" *Herman v. Mid-Atlantic Installation Servs., Inc.*, 164 F. Supp. 2d 667, 671 (D. Md. 2000); *see also Martin v. Selker Bros., Inc.,* 949 F.2d 1286, 1293 (3d Cir.1991) ("[T]he determination of the employment relationship does not depend on isolated factors but rather upon the 'circumstances of the whole activity.'" (quoting *Rutherford Food,* 331 U.S. at 730)).

"The focal point is whether the worker 'is economically dependent on the business to which he renders service or is, as a matter of economic [reality], in business for himself.'" *Schultz*, 466 F.3d at 304 (quoting *Bartels v. Birmingham*, 332 U.S. 126, 130 (1947)); *see also id.*

4

at 305 ("No single factor is dispositive; again, the test is designed to capture the economic realities of the relationship between the worker and the putative employer."); *Dubois v. Sec'y of Def.*, 161 F.3d 2, 1998 WL 610863, at *4 (4th Cir. 1998) (Table) (Murnaghan, J., dissenting) ("The touchstone of our inquiry . . . is whether the alleged employees are, 'as a matter of economic reality ... dependent upon the business to which they render service,' or in business for themselves." (quoting *Bartels*, 332 U.S. at 130)). Indeed, "[i]n United States v. Silk, [the Supreme Court] held that the relationship of employer-employee . . . was not to be determined solely by the idea of control which an alleged employer may or could exercise over the details of the service rendered to his business by the worker or workers." *Bartels*, 332 U.S. at 130. Thus, while "control is characteristically associated with the employer-employee relationship . . . employees are those who as a matter of economic reality are dependent upon the business to which they render service." *Id*. Significantly, "the collective answers to all of the inquiries" cannot "produce a resolution which submerges consideration of the dominant factor-economic dependence." *Dubois*, 1998 WL 610863, at *4 (Murnaghan, J., dissenting) (quoting *Usery v. Pilgrim Equip. Co.*, 527 F.2d 1308, 1311 (5th Cir. 1976)); *see also id.* ("It is often possible for both sides to point to the presence or absence of particular *Silk* factors. Yet such an attempt to apply mechanically the components of *Silk* represents a distortion of that case." (quoting *Weisel v. Singapore Joint Venture, Inc.,* 602 F.2d 1185, 1189 (5th Cir. 1979)).

The parties apply six similar and overlapping factors from *Baltimore Harbor Charters, Ltd. v. Ayd*, 780 A.2d 303, 318 (Md. 2001).[4] But, the economic reality test applies to the

---

[4] Those factors are:
1. Whether the employer actually exercised or had the right to exercise control over the performance of the individual's work;
2. Whether the individual's service is either outside all the usual course of business of the enterprise for which such service is performed;

5

MWPCL also. *See Avila v. Caring Hearts & Hands Assisted Living & Elder Care, LLC*, No. TDC-15-3943, 2016 WL 4083365, at *4 (D. Md. Aug. 1, 2016) ("[T]he MWPCL contains a definition of 'employer' sufficiently similar to apply the same economic reality test."); *see also McFeeley v. Jackson St. Entm't, LLC*, 825 F.3d 235, 240 (4th Cir. 2016) (stating that, where a plaintiff's "claims under Maryland labor laws run parallel to their claims under the FLSA, [the court's] analysis of federal law extends as well to the state law claims"); *Campusano v. Lusitano Constr., LLC*, 56 A.3d 303, 308 (Md. Ct. Spec. App. 2012) ("Despite its differences from the Wage and Hour Law [to which the Maryland court of Appeals applies the economic reality test], the Payment and Collection law [MWPCL] is sufficiently similar for the economic reality test to apply."). Under Maryland common law, courts consider five factors to determine whether a worker is an employee, but "the power to control the employee's conduct is the most important factor," with "'the power to select and hire the employee, . . . the payment of wages, . . . the power to discharge, . . . and (5) whether the work is part of the regular business of the employer" being secondary. *Elms v. Renewal by Andersen*, 96 A.3d 175, 182–83 (Md. 2014) (quoting *Whitehead v. Safway Steel Products, Inc.,* 497 A.2d 803, 808–09 (Md. 1985)). It was "Congress's intent that the FLSA's definition of 'employee' encompass a broader swatch of workers than would constitute employees at common law." *Salinas v. Commercial Interiors, Inc.*, 848 F.3d 125, 137 (4th Cir. 2017). Consequently, if a worker is not an employee under the

---

3. Whether the individual is customarily engaged in an independently established trade, occupation, profession, or business;
4. Whether it is the employer or the employee who supplies the instrumentalities, tools, and location for the work to be performed;
5. Whether the individual receives wages directly from the employer or from a third party for work performed on the employer's behalf; and
6. Whether the individual held an ownership interest in the business such that the individual had the ability and discretion to affect the general policies and procedures of the business.

*Balt. Harbor Charters, Ltd.*, 780 A.2d at 318–19.

FLSA's broader definition, the worker also is not an employee at common law. *See id.* Therefore, I will start by considering whether, under the totality of the undisputed facts, Hardison is an employee of Defendants based on her economic dependency and application of the economic reality test.

As for the degree of control that Defendants had over how Hardison performed her work, it is undisputed that Hardison "used curriculum and lesson plans developed by HTS." Jt. Stmt. of Facts ¶ 6. But, McBryde testified that, while Defendants' curriculum includes "lesson plans" and "a template to assist with teaching," instructors do not "have to follow that exact curriculum," provided that they "teach according to what's on the curriculum," and therefore Hardison "could follow her own structure as long as she's teaching the material that's in the chapter and what needs to be covered for that particular day." McBryde Dep. 61:20–62:16, Jt. Rec. 18. According to McBryde, Hardison "could have created a teaching plan. Most instructors do." *Id.* at 64:18–19, Jt. Rec. 18. Hardison agreed that Defendants "provided the information" and gave her "[g]uidelines on what they wanted [her] to teach." Hardison Dep. 96:20–23, 97:17–22, Jt. Rec. 90. She did not offer any evidence that Defendants dictated how she was to convey that information to the students.

Additionally, McBryde testified that "[n]obody" supervised Ms. Hardison or observed her in the classroom, although "Healthcare Training Solutions ensured that Ms. Hardison was doing her position . . . by reviewing the daily logs to see that the lesson plan was followed." McBryde Dep. 28:6–9, 29:14–18, 30:3–6, Jt. Rec. 9–10. And, while Hardison testified that "secretary/manager" Tracy Durant was her "direct supervisor," when asked to describe "how . . . Ms. Durant supervise[d] [her]," she said that Ms. Durant "would give [her] the dates . . . that [she] needed to work" and relay "communications per Ms. McBryde." Hardison Dep. 80:1–12,

Jt. Rec. 86. Thus, Defendants only controlled the subjects that Hardison presented to the students, without controlling how Hardison presented the lessons. This factor weighs in favor of independent contractor status. *Compare Herman*, 164 F. Supp. 2d at 672 (concluding that [defendant] did "not exercise the type of control necessary to label the [workers] 'employees,'" even though the workers had to, *inter alia*, "install the cable systems in accordance with [defendant and cable company's] strict specifications"; reasoning that "requiring the [workers] to meet [defendant and the cable company's] installation specifications [was] entirely consistent with the standard role of a contractor who is hired to perform highly technical duties" because a "'[quality control] constraint inheres in any subcontractor relationship'" (citation omitted)), *with Etienne v. Ameri Benz Auto Serv. LLC*, No. PWG-14-2800, 2016 WL 1222569, at *5 (D. Md. Mar. 29, 2016) (concluding that plaintiff was employee where he could not choose how to performed administrative tasks he was assigned at work), *and Randolph v. PowerComm Const., Inc.*, 309 F.R.D. 349, 356–57 (D. Md. 2015) ("Where putative employers provide specific direction for how workers, particularly low-skilled workers, are to perform their jobs, courts have weighed the control factor in favor of employee status." (quoting *Montoya v. S.C.C.P. Painting Contractors, Inc.,* 589 F. Supp. 2d 569, 579 (D. Md. 2008))), *recons. denied*, No. GJH-13-1696, 2015 WL 6438087 (D. Md. Oct. 20, 2015).

With regard to opportunities for profit or loss, when the "work is, by its nature, time oriented, not project oriented, courts have weighed the second *Silk* factor in favor of employee status." *Montoya v. S.C.C.P. Painting Contractors, Inc.*, 589 F. Supp. 2d 569, 580 (D. Md. Dec. 16, 2008). Thus, workers who "were paid at a set rate for each shift and whose work schedules were dictated by the employer's needs" were employees, whereas workers who could "improv[e] their technique so as to service more customers faster" were independent contractors. *Id.*

Hardison was paid an hourly rate, which militates in favor of employee status, but it is disputed whether her schedule was dictated by Defendants' needs. According to McBryde, Hardison "would just call [HTS] when she wanted supplemental work here and there." McBryde Dep. 30:20–22, Jt. Rec. 30. McBryde testified that HTS "didn't need her to work." McBryde Dep. 35:18:21, Jt. Rec. 11. Hardison testified to the contrary that Tracy Durant "would call [her] and tell [her] if they had availability, if she needed [Hardison]." Hardison Dep. 97:23–98:4, Jt. Rec. 90–91. When a date was available, Hardison "could agree to the day or not." Hardison Dep. 23–25, Jt. Rec. 69; *see id.* at 75:16:19, Jt. Rec. 85 ("I could say, no, I don't want to come in today."). Yet, it does not appear that Hardison could earn more money by "improving [her] technique." Thus, this factor weighs in favor of employee status. *See Montoya*, 589 F. Supp. 2d at 580.

As for Hardison's investments in the work, she only invested in a $20–30 lab coat and an $80 textbook, and she did not employ any other workers. Hardison Dep. 95:22–96:15, Jt. Rec. 90. Regarding the degree of skills required, Hardison was a registered nurse and had a bachelor's degree, which she earned three years before she began working for Defendants in 2012, and she had no teaching experience when she began working for Defendants, who trained her initially. Hardison Dep. 7:8–12, 9:14–24, 10:25–11:4, Jt. Rec. 68–69; *see* McBryde Dep. 30:18–31:3, Jt. Rec. 10 (testifying that, when Hardison began working for HTS, "the lead instructor would review the material with her, make sure she understood [the company's] structure, and see if she agreed to follow that"). These factors favor a finding that Hardison was an employee. *See Schultz,* 466 F.3d at 305.

With regard to the permanence of the working relationship, I note that when a worker is "free to find other work," that suggests independent contractor status, whereas "continuity during the period [in] which they worked" suggests employee status. *See Randolph*, 309 F.R.D. at 359.

Working "for multiple [employers] at the same time" also can suggest a lack of permanence. *See McFeeley*, 47 F. Supp. 3d at 272–73. Hardison worked for Defendants from 2012 to September 2015. Hardison Aff. ¶ 1, Jt. Rec. 108, but she took "a break of about a year" from May 2014 until June 2015, Hardison Dep. 72:1–18, Jt. Rec. 84. She testified that "maybe, possibly," she worked for Defendants "more than 10 days" during 2012, Hardison Dep. 11:15–24, Jt. Rec. 69, and the evidence shows that she worked for HTS only nine days in 2015, Time Sheets, Jt. Rec. 120–26.

Although it was her "only teaching position," Hardison Aff. ¶ 1, Jt. Rec. 108, it is clear that she had other employment. *See* McBryde Dep. 30:20–22, Jt. Rec. 30 ("We were clear that she had other jobs and that she would just call us when she wanted supplemental work here and there."). Hardison testified that she worked for "[m]aybe two" other companies in 2012 and one other company in 2013. Hardison Dep. 11:15–24, 12:7, Jt. Rec. 69. In 2014, she worked for two other organizations, receiving wages of $33,997 from one of them, and in 2015 she worked for HTS, Maryland MRI, and a temp agency, *Id.* at 62:5–65:2, Jt. Rec. 82. Her 2015 tax return reflects a total income of $21,021, 2015 Tax Return, Jt. Rec. 168–69, and her pay stubs show that only $1,480 of this came from HTS. Paystubs, Jt. Rec. 153–157; Pl.'s Mem. 5. This factor strongly supports independent contractor status. *See Randolph*, 309 F.R.D. at 359; *McFeeley*, 47 F. Supp. 3d at 272–73. This factor is, however, "entitled to only modest weight in assessing employee status under the FLSA." *Hart,* 967 F. Supp. 2d at 920.

As for the final factor, "this factor does not turn on whether the individual worker was integral to the business; rather, it depends on whether the service the worker performed was integral to the business." *Randolph*, 7 F. Supp. 3d at 571 (quoting *Montoya*, 589 F. Supp. 2d at 582). Teaching is integral to Defendants' business, which teaches students to become certified

nursing assistants. Thus, this factor also weighs in favor of an employer–employee relationship. *See id.*

Thus, degree of control, which "is an important part of the *Silk* test," and permanence of the working relationship militate toward independent contractor status, while the remaining factors weigh in favor of employee status. *See Schultz*, 466 F.3d at 305. But, it is essential to focus on the forest (economic dependency), not just the particular trees (the individual *Silk* factors), and "[t]he focal point is whether the worker 'is economically dependent on the business to which he renders service or is, as a matter of economic [reality], in business for himself.'" *Schultz*, 466 F.3d at 304. It is significant that when Hardison stopped working for Defendants, she did not apply for unemployment because "[a]t that time [she] had another job" through a temp agency as a registered nurse." Hardison Dep. 17:4–18:1, Jt. Rec. 70–71. It also is significant that she only worked 23 days for HTS in 2014, for a total of 135 hours, and earned no more than $2,835 from HTS in 2014, Paystubs, Jt. Rec. 110–19, while she received $33,997 from another employer that year, Hardison Dep. 62:5–65:2, Jt. Rec. 82; and in 2015, she earned a total of $21,021, 2015 Tax Return, Jt. Rec. 168–69, only $1,480 of which came from HTS, Paystubs, Jt. Rec. 153–157; Pl.'s Mem. 5. Considering the totality of the circumstances and focusing on whether Hardison was economically dependent on teaching for HTS, while assessing the *Silk* factors, it is apparent that the reality is that Hardison was not economically dependent on her work at HTS, which did not amount to even ten percent of her annual income in 2014 or 2015. As for her earlier years of employment, she testified that she worked for HTS for only about ten days in 2012, and the record is devoid of any facts that would show that the income she earned from HTS was materially different in 2012 and 2013 from her later earnings. Therefore, the economic reality is that she was an independent contractor for Defendants, and not

11

an employee under the FLSA and MWPCL. *See Bartels*, 332 U.S. at 130 *Schultz*, 466 F.3d at 304–05; *Herman*, 164 F. Supp. 2d at 671. And, because Hardison was not an employee under the FLSA's broader definition, she also was not an employee at common law. *See Salinas v. Commercial Interiors, Inc.*, 848 F.3d 125, 137 (4th Cir. 2017).

## Conclusion

Because Hardison was not an employee under the FLSA, MWPCL, or common law, she cannot prevail on any of her claims against Defendants. *See* 29 U.S.C. § 215(a)(3); *Hall v. DIRECTV, LLC*, 846 F.3d 757, 764 (4th Cir. 2017); *Butler v. PP & G, Inc.*, No. WMN-13-430, 2013 WL 5964476, at *2 (D. Md. Nov. 7, 2013); *Cogan v. Harford Mem. Hosp.*, 843 F. Supp. 1013, 1022 (D. Md. 1994); *Talbot v. Baltimore City Bd. of Sch. Comm'rs*, No. 0308 Sept. Term 2014, 2016 WL 1749697, at *8 (Md. Ct. Spec. App. May 3, 2016). Accordingly, I will deny Plaintiff's Motion for Partial Summary Judgment and grant Defendants' Cross-Motion for Summary Judgment on all counts.

## ORDER

It is, this 25th day of May, 2017 hereby ORDERED that

1. Plaintiff's Motion for Partial Summary Judgment, ECF No. 35, IS DENIED;

2. Defendants' Cross-Motion for Summary Judgment, ECF No. 39, IS GRANTED;

3. Judgment IS ENTERED in Defendants' favor and against Plaintiff;

4. The trial scheduled in this case IS CANCELLED;

5. Plaintiff's pending Motion in Limine, ECF No. 44, IS DENIED AS MOOT; and

6. The Clerk SHALL CLOSE this case.

/S/
Paul W. Grimm
United States District Judge

lyb